# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

KEITH DEMENT,              )
                               )
        **Plaintiff,**           )          **Civil Action Nos. 5:13-8899**
                               )
**v.**                            )
                               )
**SUMMERS COUNTY**         )
**COURTHOUSE,** *et al.*,      )
                               )
        **Defendants.**     )

### PROPOSED FINDINGS AND RECOMMENDATION

On April 24, 2013, Plaintiff, acting *pro se* and in confinement at Southern Regional Jail in Beaver, West Virginia, filed a Complaint claiming entitlement to relief under 42 U.S.C. §1983.[1] (Document No. 1.) On September 6, 2013, and November 12, 2013, Plaintiff filed Memorandums in support of his Complaint. (Document Nos. 3 and 6.) On March 24, 2014, Plaintiff filed his Amended Complaint. (Document No. 7.) In his Amended Complaint,[2] Plaintiff names the following as Defendants: (1) Summers County Courthouse/Judicial System; (2) Amy Mann, Summers County Prosecuting Attorney; (3) Kristin R. Cook, Summers County Assistant Prosecuting Attorney; (4) Summers County Sheriff's Department; (5) Maria Madrieaga, REACHH; (6) Peter Sherman, attorney for Legal Aid; (7) Southern Regional Jail; and (8) Christina Marie Berry. (Id., pp. 1 - 2.) Plaintiff alleges that he was arrested on December 19, 2012, by Deputy C.J. Westling "for

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

[2] By Order entered this day, the undersigned has granted Plaintiff's Motion to Amend Complaint (Document No. 7.), which contained his amended allegations.

possession of a firearm, which wasn't mine." (Id., p. 3.) Plaintiff contends the "my rights were not read to me nor was I advised of being under arrest." (Id.) Plaintiff states that on January 6, 2013, he was "beat up" by an inmate at the Southern Regional Jail. (Id.) Plaintiff alleges that Christina Marie Berry "contacted her daughter's father, who has family working as correctional officers at this jail, to have me beat up." (Id.) Plaintiff contends that another inmate told him that the inmate "got word from the [correctional officers] that [Plaintiff] sexually assaulted Christina Marie Berry's daughter." (Id.)

Plaintiff asserts that "[t]he warrant that Deputy Sgt. Cochran filed on the 8th day of January, 2013, which states that the Court has found probable cause to believe that Defendant Keith Allen Dement did commit an offense or offenses in the County of Summers on the 19th day of December, 2012, previous to the issuance of the warrant was unlawfully against the peace and dignity of the State." (Id., p. 4.) Plaintiff further complains that a criminal complaint was issued and he was arraigned on charges of sexual assault in the first degree, sexual abuse by a parent, and incest on January 9, 2013. (Id.) Plaintiff alleges that he "was never informed of these charges and his rights were never read to him." (Id.) Plaintiff states that he has been in jail since the December 19, 2012, and the State delayed DNA testing until February 19, 2013. (Id.) Plaintiff alleges that on January 17, 2013, Assistant Prosecutor Kristen Cook stated that the victim had contracted STDs. (Id.) Plaintiff claims that he "later found out that the victim had caught genital warts." (Id.) Plaintiff states that he was tested for STDs at the Beckely Regional General Hospital on February 19, 2013, "which came up empty handed because I had no such thing as genital warts." (Id.) Plaintiff complains that Assistant Prosecutor Cook refused to drop the charges. (Id.) Plaintiff claims that "[i]nstead of these charges being dismissed by lack of DNA, I was indicted on 14 charges on the 5th day of March,

2

2013, by the Grand Jury." (Id.) Plaintiff alleges that he appeared before Circuit Court Judge Robert A. Irons on March 8, 2013, where he requested a "fast and speedy trial which [he] never got in this case." (Id., p. 5.) Plaintiff claims that his attorney, Jeffrey S. Rodgers, filed a Motion for Mental Examination on May 3, 2013, which violated his "right for a fast and speedy trial." (Id.) Plaintiff asserts that on July 19, 2013, he "was forced into taking a plea bargain which [he] did not want by Attorney Jeffrey Rodgers." (Id.) Plaintiff alleges that Attorney Rodgers withdrew as counsel on August 2, 2013, "when [Plaintiff] found out that he advised [him] incorrectly as to the plea and the Circuit Court Judge Robert A. Irons refused to withdraw the plea." (Id.)

Plaintiff complains that during divorce proceedings Family Court Judge K. Bruce Lazenby "allowed Maria Madariaga, with her education and experience, to testify as an expert witness on forensic interviewing." (Id., p. 6.) Plaintiff asserts that "Ms. Madariaga concluded that the victim was physically and sexually abused by [Defendant] numerous times, based on statements made in the interview." (Id.) Plaintiff further states that Ms. Madariaga improperly testified that "the victim did not appear to be coached to deliver her testimony." (Id.) Plaintiff complains that Family Court Judge Lazenby refused to accept his testimony that "the victim caught STDs" and Plaintiff's tested negative for STDs. (Id.) Thus, Plaintiff argues that Family Court Judge Lazenby erroneously determined that Plaintiff abused the victim. (Id.)

Based on the foregoing, Plaintiff alleges that Defendants have damaged his character "by saying such lies without proof" and subjected him to public ridicule. (Id.) Plaintiff states that the judicial system has taken "unfair advantage" of him and subjected him to prejudice. (Id., p. 7.) Plaintiff notes that he is a "mentally deficient person," who received SSI benefits due to his disability. (Id.) Plaintiff alleges that he should have been found not guilty of the charges because the

"victim caught genital warts and he has none." (<u>Id.</u>, p. 6.) As relief, Plaintiff requests "$250,000 from each Defendant." (<u>Id.</u>, pp. 7 - 8.)

## THE STANDARD

Pursuant to 28 U.S.C. § 1915A, the Court is required to screen each case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. On screening, the Court must recommend dismissal of the case if the complaint is frivolous, malicious or fails to state a claim upon which relief can be granted. A "frivolous" complaint is one which is based upon an indisputably meritless legal theory. <u>Denton v. Hernandez</u>, 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992). A "frivolous" claim lacks "an arguable basis either in law or in fact." <u>Neitzke v. Williams</u>, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831-32, 104 L.Ed.2d 338 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." <u>Id.</u>, 490 U.S. at 327, 109 S.Ct. at 1833. A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." <u>Id.</u>, 490 U.S. at 327-28, 109 S.Ct. at 1833. A complaint, therefore, fails to state a claim upon which relief can be granted factually when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

## ANALYSIS

"[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates." <u>Turner v. Safley</u>, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). Title 42 U.S.C. § 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." Thus, Section 1983 provides a "broad remedy for violations of federally protected civil rights." <u>Monell v. Dep't of Social Services</u>, 436 U.S. 658, 685, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Generally speaking, to state and prevail upon a claim under

42 U.S.C. § 1983, a Plaintiff must prove that (1) a person acting under color of State law (2) committed an act which deprived him of an alleged right, privilege or immunity protected by the Constitution or laws of the United States.

1.      **Improper Parties**:

Plaintiff names as Defendants the Summers County Courthouse/Judicial System and the Southern Regional Jail. Section 1983 claims, however, must be directed at a "person." See Preval v. Reno, 203 F.3d 821 (4th Cir. 2000)(unpublished)(finding that the Piedmont Regional Jail is not a "person" under Section 1983); Roach v. Burch, 825 F.Supp. 116, 117 (N.D.W.Va. 1993)(stating that the West Virginia Regional Jail Authority is not a "person" under Section 1983); also see Will v. Michigan Dept. of State Police, 491 U.S. 58, 66, 109 S.Ct. 2304, 2309, 105 L.Ed.2d 45 (1989)(Suits against a state or state agencies for monetary damages are barred by the Eleventh Amendment to the United States Constitution); Webb v. Parsons, 2011 WL 2076419 (S.D.W.Va. May 6, 2011)(finding that the West Virginia Regional Jail Authority, an agency of the State of West Virginia, is immune from suit under the Eleventh Amendment). Accordingly, the undersigned finds that the Summers County Courthouse/Judicial System and the Southern Regional Jail must be dismissed as Defendants because they are not "persons" as required by Section 1983.

2.      **Heck**:

Plaintiff alleges that his constitutional rights were violated during the course of his criminal proceedings in the Circuit Court of Summers County. Specifically, Plaintiff challenges the validity of his conviction based on the following: unlawful arrest, violation of his right to a speedy trial, insufficient evidence to support conviction, improper admission of expert testimony, malicious prosecution, judicial prejudice, and ineffective assistance of counsel. Given the nature of Plaintiff's

allegations, it appears that Plaintiff is implying that his conviction is invalid as a result of various constitutional violations during his criminal trial in the Circuit Court of Summers County, West Virginia. Consequently, the undersigned finds that Plaintiff has failed to state a cognizable claim under Section 1983 pursuant to Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). In Heck, the United States Supreme Court held that:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a §1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. §2254. A claim for damages bearing the relationship to a conviction or sentence that has not been so invalidated is not cognizable under §1983.

Id. at 486-87, 114 S.Ct. 2372. See also Ballenger v. Owens, 352 F.3d 842 (4th Cir. 2003)(holding that an arrestee's Section 1983 claim was not cognizable against state trooper, alleging unreasonable search and seizure, under *Heck,* since judgment in arrestee's favor would have implied the invalidity of conviction). Plaintiff indicates that he has filed a State *habeas* petition, which is currently pending in the Circuit Court of Summers County. The undersigned, therefore, finds that because Plaintiff has not demonstrated that his criminal conviction has been invalidated, Plaintiff's Section 1983 claim is not cognizable pursuant to Heck. Accordingly, the undersigned respectfully recommends that the above claims be dismissed.

3.   **Summers County Sheriff's Department:**

Plaintiff's Complaint alleges that he was unlawfully arrested and detained by officers of the Summers County Sheriff's Department in violation of his constitutional rights because there was insufficient evidence to support his arrest. Plaintiff states that he was arrested on December 19, 2012. (Document No. 7, p. 4.) Plaintiff states that he was indicted by the Grand Jury on March 5,

6

2013. (Id.) It is "well established that where an officer presents all relevant probable cause evidence to an intermediary, such as a prosecutor, a grand jury, or a magistrate, the intermediary's independent decision to seek a warrant, issue a warrant or return an indictment breaks the causal chain and insulates the officer from a Section 1983 claim based on lack of probable cause for an arrest or prosecution." Rhodes v. Smithers, 939 F.Supp. 1256, 1274 (S.D.W.Va. 1995). Accordingly, Plaintiff's claim against the Summers County Sheriff's Department should be dismissed.

**4.     Defendants Sherman, Rodgers, Berry, and Madrieaga:**

In his Complaints, Plaintiff contends that Peter Sherman and Jeffrey Rodgers violated his constitutional rights by providing ineffective assistance of counsel. Plaintiff alleges that Maria Madrieaga violated his constitutional rights by giving improper and false testimony. Plaintiff alleges that Christina Marie Berry violated his constitutional rights by having her daughter's father arrange for Plaintiff to be assaulted by inmates within the Southern Regional Jail. Generally speaking, to state and prevail upon a claim under 42 U.S.C. § 1983, a Plaintiff must prove that (1) a person acting under color of State law (2) committed an act which deprived him of an alleged right, privilege or immunity protected by the Constitution or laws of the United States. First, the Court finds that Defendants Sherman and Rodgers were not "state actors." It is well established that an attorney does not act under the color of state law when retained or court-appointed. Vermont v. Brillon, 556 U.S. 81, 129 S.Ct. 1283, 1291, 173 L.Ed.2d 231 (2009)("Unlike a prosecutor or the court, assigned counsel ordinarily is not considered a state actor."); Polk County v. Dodson, 454 U.S. 312, 3325, 102 S.Ct. 445, 453, 70 L.Ed.2d 509 (1981)("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."); Hall v. Quillen, 631 F.2d 1154, 1155-56 (4th Cir. 1980)(state-appointed counsel is not

7

acting under color of state law), <u>cert denied</u>, 454 U.S. 1141, 102 S.Ct. 99, 71 L.Ed.2d 293 (1982); <u>Deas v. Potts</u>, 547 F.2d 800 (4th Cir. 1976)("A private attorney who is retained to represent a criminal defendant is not acting under color of state law, and therefore is not amenable to suit under § 1983."). Next, the undersigned finds that although Ms. Madrieaga may have been called as a witness for the State, she was not a "state actor" for purposes of Section 1983.[3] "[P]rivate citizen witnesses are not 'state actors' . . . under § 1983." <u>Nelson v. Thornsbury</u>, 2010 WL 1038509 (S.D.W.Va. Jan. 12, 2010); <u>also see</u> <u>Hall v. Watson</u>, 2007 WL 1447755 (D.S.C. May 11, 2007)(finding that a detective "testifying as a witness at the preliminary hearing, was not a state actor.")

Finally, the undersigned finds that Plaintiff's allegation against Ms. Berry does not constitution State action. Private conduct constitutes State action only if it is "fairly attributable to the State." <u>Id.</u> at 937, 102 S.Ct. 2744; <u>see also</u> <u>Scott v. Hern</u>, 216 F.3d 897, 906 (10th Cir. 2000). This requirement is satisfied if two conditions are met: (1) "the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and (2) the private party charged with the deprivation "must be a person who may fairly be said to be a State actor. This may be because she is a State official, because she has acted together with or has obtained significant aid from State officials, or because her conduct is otherwise chargeable to the State." <u>Lugar</u>, 457 U.S. at 937, 102 S.Ct. 2744. Ms. Berry's alleged misconduct of having her daughter's father arrange for Plaintiff to

---

[3] Even assuming Ms. Madrieaga was a state actor, she would be entitled absolute immunity. Witnesses who testify in Court are absolutely immune from any claims relating to their testimony. *Briscoe v. LaHue*, 460 U.S. 325, 326, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983)(witnesses in judicial proceedings receive "absolute immunity from damages liability under § 1983 based on their testimony").

be "beat up" by inmates at SRJ, does not constitute private conduct "fairly attributable to the State" under the above test. Thus, Ms. Berry is not a State actor, and therefore Plaintiff's claim against her does not fall under Section 1983. Based on the foregoing, the undersigned finds that Plaintiff cannot pursue a Section 1983 claim against Defendants Sherman, Rodgers, Berry, and Madrieaga.

5.   ***Rooker-Feldman* Doctrine:**

"Under the *Rooker-Feldman* doctrine, lower federal courts generally do not have jurisdiction to review state-court decisions; rather, jurisdiction to review such decisions lies exclusively with superior state courts and, ultimately, the United States Supreme Court." Plyler v. Moore, 129 F.3d 728, 731 (4th Cir. 1997)(citing District of Columbia Ct. App. v. Feldman, 460 U.S. 462, 482-86, 103 S.Ct. 1303, 1314-17, 75 L.Ed.2d 206 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923)); also see Friedman's Inc. v. Dunlap, 290 F.3d 191, 196 (4th Cir. 2002)(quoting Jordahl v. Democratic Party of Va., 122 F.3d 192, 196 (4th Cir. 2002)("[F]ederal courts are divested of jurisdiction 'where entertaining the federal claim should be the equivalent of an appellate review of the state court order.'")). The Fourth Circuit has explained that "the *Rooker-Feldman* doctrine applies only when the loser in state court files suit in federal district court seeking redress for an injury allegedly caused by the state court's decision itself." Davani v. Virginia Dept. of Transp., 434 F.3d 712, 713 (4th Cir. 2006). In the instant case, Plaintiff is essentially asking this Court to review and reject the findings of the Family Court of Summers County. In support of his request, Plaintiff alleges as follows: (1) Judge Lazenby allowed Ms. Madariaga to testify as an expert witness during divorce proceedings; and (2) Judge Lazenby erroneously determined that Plaintiff abused the child victim. Thus, Plaintiff is essentially requesting that this Court review the decisions of the Family Court of Summers County. Accordingly, the undersigned finds that the

*Rooker-Feldman* Doctrine precludes Plaintiff's indirect attempt to appeal a State Court decision to this Court.

**6.**     **Judicial Immunity:**

"Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction, as this Court recognized when it adopted the doctrine in <u>Bradley v. Fisher</u>, 80 U.S. 335, __ S.Ct. ___, 20 L.Ed. 646 (1872)." <u>Imbler v. Patchman</u>, 424 U.S. 409, 419, 96 S.Ct. 984, 990, 47 L.Ed.2d 128 (1976). Judicial immunity does not attach when a judicial officer acts in the clear absence of all jurisdiction. <u>Stump v. Sparkman</u>, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); <u>Pressly v. Gregory</u>, 831 F.2d 514, 517 (4th Cir. 1987). The doctrine of judicial immunity, however, "attaches even if the act in question was in excess of [the judge's] authority." <u>Jackson v. Houck</u>, 181 Fed. App'x 372, 372 (4th Cir. 2006) (<u>quoting</u> <u>Mireles v. Waco</u>, 502 U.S. 9, 12-13, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991)). "This immunity applies even when the judge is accused of acting maliciously and corruptly, and it 'is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." <u>Id.</u> (adopting doctrine of absolute judicial immunity in Section 1983 actions) (internal citation omitted). Based upon the allegations contained in the Complaints, the undersigned finds that Judges Irons and Lazenby are absolutely immune from suit. Plaintiff appears to argue that Judge Irons allowed his constitutional rights to be violated during his criminal proceeding and that Judge Lazenby improperly admitted evidence during his divorce proceedings. As stated above, judges have absolute immunity for their judicial acts even when the judge is accused of acting maliciously and corruptly. Accordingly, Plaintiff's claim against Judges Irons and

10

Lazenby must be dismissed.

**7.** **Prosecutorial Immunity:**

Prosecutors have absolute immunity for activities performed as "an officer of the court" if the conduct at issue is closely associated with the judicial phase of the criminal process. Van de Kamp v. Goldstein, 555 U.S. 335, 341 - 343, 129 S.Ct. 855, 860 - 862, 172 L.Ed.2d 706 (2009). In determining whether a prosecutor is entitled to absolute immunity, the Court must apply the "functional approach" examining the nature of the function performed. Id., 555 U.S. at 342 , 129 S.Ct. at 861. It is well established that prosecutors are absolutely immune "for their conduct in initiating a prosecution and in presenting the State's case, insofar as that conduct is 'intimately associated with the judicial phase of the criminal process.'" Burns v. Reed, 500 U.S. 478, 486, 111 S.Ct. 1934, 1939, 114 L.Ed.2d 547 (1991)(quoting Imbler, 424 U.S. at 430 - 431, 96 S.Ct. at 995). Further, absolute immunity extends to "actions preliminary to the initiation of a prosecution and actions apart from the courtroom." Buckley v. Fitzsimmons, 509 U.S. 259, 272, 113 S.Ct. 2606, 2615, 125 L.Ed.2d 209 (1993)(quoting Imbler, 424 U.S. at 431, 96 S.Ct. at 995 - 996)). A prosecutor acts as an advocate or "officer of the court" when performing tasks, such as (1) initiating a judicial proceeding, (2) presenting evidence in support of a search warrant application, (3) conducting a criminal trial, bond hearing, grand jury proceeding or pre-trial hearing, (4) engaging in "an out-of-court effort to control the presentation of [a] witness' testimony," and (5) making a "professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before the grand jury after a decision to seek an indictment has been made." Buckley, 509 U.S. at 272, 113 S.Ct. at 2615(quoting Imbler, 424 U.S. at 431, 96 S.Ct. at 995 - 996); Van de Kamp, 555 U.S. at 434, 129 S.Ct. at 861; Dababnah v. Keller-Burnside, 208 F.3d 467, 471 - 472 (4th Cir.

2000)(stating that "numerous courts have found prosecutors absolutely immune when undertaking [extradition proceedings].")

Furthermore, a prosecutor is entitled to absolute immunity even if he or she "acted with an improper state of mind or improper motive." Shmueli v. City of New York, 424 F.3d 231, 237 (2nd Cir. 2005); also see Smith v. McCarthy, 349 Fed.Appx. 851, 859 (4th Cir. 2009), cert. denied, ___ U.S. ___, 131 S.Ct. 81, 178 L.Ed.2d 26 (2010); Brown v. Daniel, 230 F.3d 1351 (4th Cir. 2000)("[T]o the extent [plaintiff] alleges that the prosecutors engaged in misconduct during the prosecution of this case . . ., the prosecutors are absolutely immune."). Thus, prosecutors are entitled to absolute immunity for withholding materially exculpatory evidence, and knowingly presenting perjured testimony or false or misleading evidence to the Court or grand jury. Burns, 500 U.S. at 490-92, 111 S.Ct., at 1941-42("A state prosecuting attorney is absolutely immune from liability for damages under § 1983 for participating in a probable-cause hearing . . .."); Imbler, 424 U.S. at 422, 96 S.Ct. 984 at 991(citing Yaselli v. Goff, 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395 (1927))(finding prosecutor entitled to absolute immunity for allegations that he "maliciously and without probable cause procured plaintiff's grand jury indictment by the willful introduction of false and misleading evidence."); also see Brown v. Daniel, 230 F.3d at 1352; Lyles v. Sparks, 79 F.3d 372, 377 (4th Cir. 1996); Carter v. Burch, 34 F.3d 257, 263 (4th Cir. 1994), cert. denied, 513 U.S. 1150, 115 S.Ct. 1101, 130 L.Ed2d 1068 (1995). Although prosecutors may be entitled to absolute immunity, prosecutors are subject to criminal and professional sanctions for prosecutorial abuses. Imbler, 424 U.S. at 429, 96 S.Ct. at 994; Malley v. Briggs, 475 U.S. 335, 343, n. 5, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). It is well recognized that "[a]bsolute prosecutorial immunity 'is not grounded in any special esteem for those who perform these functions, and certainly not from a desire to shield abuses of office, but

because any lesser degree of immunity could impair the judicial process itself.'" Dababnah, 208 F.3d at 471(quoting Kalina v. Fletcher, 522 U.S. 118, 127, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997)). The Imbler Court determined the importance of protecting the integrity of the prosecutor's office and the judicial system outweighs the desire to afford civil redress to a wronged defendant. Imber, 424 U.S. at 427 - 429, 96 S.Ct. at 993 - 994.

A prosecutor, however, is not entitled to absolute immunity for "investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings." Buckley, 509 U.S. at 273, 113 S.Ct. at 2615(citing Burns, 500 U.S. at 491, 11 S.Ct. at 1941-42). Thus, a prosecutor is only entitled to qualified immunity for administrative actions or investigative functions not related to trial preparation, such as holding a press conference, engaging in investigative activity prior to the establishment of probable cause to arrest, providing police officers with legal advice during the investigative phase, or acting as a complaining witness in support of a warrant application. Id.; also see Van de Kamp, 555 U.S. at 342 - 343, 129 S.Ct. at 861. The Supreme Court has explained as follows:

> There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand. When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is "neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other. Thus, if a prosecutor plans and executes a raid on a suspected weapons cache, he "has no greater claim to complete immunity than activities of police officers allegedly acting under his direction."

Buckley, 509 U.S. at 273, 113 S.Ct. at 2616(internal citations omitted). Thus, a prosecutor does not have absolute immunity for a claim that he or she fabricated evidence during the preliminary investigation of an unsolved crime. Id., 509 U.S. at 275, 113 S.Ct. at 2616 - 2617.

In the instant case, Plaintiff alleges that Prosecutor Mann and Assistant Prosecutor Cook violated his constitutional rights by prosecuting Plaintiff for sexual assault charges. Plaintiff alleges that there was insufficient evidence to support his prosecution. Specifically, Plaintiff states Prosecutor Mann and Assistant Prosecutor Cook should have dismissed the charges against him because the victim had genital warts and his blood test revealed that he did not have a STD. Based on the foregoing, Plaintiff contends that Prosecutor Mann and Assistant Prosecutor Cook improperly initiated prosecution against him. As stated above, prosecutors are entitled to absolutely immune concerning their decision to initiate prosecution. See Imbler, 424 U.S. at 431, 96 S.Ct. at 995(holding that "in initiating a prosecution . . . the prosecutor is immune"). The Court further finds that Prosecutor Mann and Assistant Prosecutor Cook are entitled to absolute immunity as their conduct was intimately associated with the judicial phase of the criminal process. See Imbler, 424 U.S. at 422, 96 S.Ct. 984 at 991(citing Yaselli, 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395 (1927))(finding prosecutor entitled to absolute immunity for allegations that he "maliciously and without probable cause procured plaintiff's grand jury indictment by the willful introduction of false and misleading evidence."); Smith, 349 Fed.Appx. at 859 (a prosecuting attorney is absolutely immune for conspiring with police officers to present false testimony and for withholding exculpatory evidence as these actions are "intimately associated with the judicial process); Logan v. Laterzo, 24 Fed.Appx. 579, 581 (7th Cir. 2001)(finding prosecutors absolutely immune for allegedly delaying the criminal trial by misrepresenting the existence of a crime-scene videotape); Brown, 230 F.3d at 1351(finding that prosecutor was entitled to absolute immunity for knowingly using perjured testimony); Lyles, 79 F.3d at 377(holding that a prosecutor enjoyed absolute immunity from claims that she made false representations and suborned perjury before the grand

14

jury); <u>Rhodes v. Smithers</u>, 939 F.Supp. 1256, 1269 (S.D.W.Va. Sept. 15, 1995)(District Judge Copenhaver)("[T]he presentation of false testimony in the course of a judicial proceeding is an allegation 'for which the prosecutor is afford absolute immunity.'") <u>citing</u> <u>Carter v. Burch</u>, 34 F.3d 257, 263 (4th Cir. 1994)). Prosecutor Mann and Assistant Prosecutor Cook are further entitled to absolute immunity concerning Plaintiff's claim that he was denied the right to a speedy trial. <u>See</u> <u>Ledwith v. Douglas</u>, 568 F.2d 117, 119 (8th Cir. 1978)(finding plaintiff's "1983 claim for damages for libel and denial of a speedy trial are barred by the doctrine of prosecutorial immunity"); <u>Barefoot v. Goulian</u>, 2010 WL 2696760, *5 (E.D.N.C. July 7, 2010)(finding prosecutor entitled to absolute immunity for allegations that he failed to provide a speedy trial, withheld exculpatory evidence, and conducted warrantless searches of plaintiff's property.); <u>Edwards v. Sabb</u>, 2010 WL 4347759, * 2 (D.S.C. Aug. 4, 2010)("[T]he prosecutor has absolute immunity and cannot be sued in a District Court under 42 U.S.C. § 1983 for failure to afford Plaintiff a speedy trial."); <u>Keeper v. Davis</u>, 2009 WL 2450439, * 6 (N.D.W.Va. Aug. 7, 2009)(finding prosecutor absolute immunity for speedy trial deprivation claim); <u>Cribb v. Pelham</u>, 552 F.Supp. 1217 (D.S.C. 1982)("Prosecutors enjoyed absolute immunity with respect to claims of denial of civil rights through denial of right to speedy trial."), <u>aff'd</u>, 782 F.2d 1034 (4th Cir. 1985). Accordingly, the undersigned recommends that Plaintiff's claims against Prosecutor Mann and Assistant Prosecutor Cook be dismissed because they are absolutely immune from suit under Section 1983.

**8.**   **Plaintiff's Claim of Conspiracy:**

The undersigned finds that Plaintiff's conclusory allegations of a conspiracy do not establish a constitutional violation. Specifically, Plaintiff alleges that Judge Irons, Prosecutor Amy Mann, Assistant Prosecutor Kristin R. Cook, Attorney Peter Sherman, and Attorney Rodgers conspired to

15

violate Plaintiff's constitutional rights during his criminal proceedings. To allege a claim of conspiracy, Plaintiff must establish the following elements: (1) an agreement between two or more persons, which constitutes the act, and (2) the doing of either an unlawful act or a lawful act by unlawful means. See United States v. Burgos, 94 F.3d 849, 857 (4th Cir. 1996), cert. denied, 519 U.S. 1151, 117 S.Ct. 1087, 137 L.Ed.2d 221 (1997). Mere conclusory allegations of a conspiracy do not demonstrate the "meeting of the minds" element and therefore, fails to state a cognizable claim. See Brown v. Angelone, 938 F.Supp. 340, 346 (W.D. Va. 1996). Plaintiff does not allege any facts to establish that the above Defendants formed an agreement to falsely arrest or improperly prosecute Plaintiff based upon insufficient evidence and his conspiracy claim, therefore, does not rise to the level of constitutional magnitude.

**9.      Defamation.**

Plaintiff alleges that Defendants defamed his character. Section 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." Thus, Section 1983 does not provide a remedy for violations of rights arising under State law. The undersigned finds that Plaintiff's claim that Defendants defamed his character fails to allege a violation of a federally protected right. See Paul v. Davis, 424 U.S. 693, 712, 96 S.Ct. 1155, 1165 - 66, 47 L.Ed.2d 405 (1976)(finding that "any harm or injury to [Plaintiff's interest in his reputation], even where as here inflicted by an officer of the State, does not result in a deprivation of any 'liberty' or 'property' recognized by state or federal law"); Saunders v. Dickerson, 2008 WL 2543428 *2 (E.D.Va. Jun. 25, 2008)(stating that "[p]laintiff's reputation is protected through state tort law, and a mere allegation of damage to one's reputation and character fails to implicate any liberty or property interests protected by the Constitution"); Miller v. Jack,

2007 WL 2050409 (N.D.W.Va. Jul. 12, 2007)(finding that "damages for defamation are not recoverable under § 1983 because a defamed person has not been deprived of any right, privilege, or immunity secured to him by the Constitution or the laws of the United States"). Thus, it appears that Plaintiff is merely alleging a defamation claim under West Virginia law. Viewing Plaintiff's claim against Defendants as constituting a tort claim of defamation under West Virginia law, the District Court cannot consider it under its supplemental jurisdiction because, as the undersigned finds herein, Plaintiff has failed to state any other claim for which relief can be granted over which the District Court has original jurisdiction. Accordingly, Plaintiff's above claim should be dismissed because he has failed to state a claim upon which relief can be granted.

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **DISMISS** Plaintiff's Complaints (Document Nos. 1 and 7.) and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen (17) days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

17

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Berger and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: August 29, 2014.

R. Clarke VanDervort
United States Magistrate Judge